# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMANDA M. NORMAN, | § | |
| | § | No. 26, 2018 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K14C-12-003 |
| ALL ABOUT WOMEN, P.A., a | § | |
| Delaware Corporation and | § | |
| CHRISTINE W. MAYNARD, M.D., | § | |
| Individually, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | | |

Submitted: June 13, 2018
Decided: August 21, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

William Fletcher, Esquire (*Argued*), and Dianna E. Louder, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, for Appellant.

Lauren C. McConnell, Esquire (*Argued*), and Gregory S. McKee, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, for Appellees.

**VAUGHN**, Justice:

This is an appeal from the Superior Court's grant of summary judgment in favor of defendants All About Women, P.A. and Christine W. Maynard, M.D. in a medical negligence case. The grant of summary judgment followed an earlier ruling that the testimony of plaintiff Amanda M. Norman's medical expert was inadmissible under the rules of evidence. In that ruling, the court excluded the expert's testimony because the plaintiff failed to show that his opinions were "'based on information reasonably relied upon by experts' in his field."[1] For the reasons which follow, we reverse the Superior Court's ruling which excluded the expert's testimony and its grant of summary judgment. The case is remanded to the Superior Court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

We set forth the facts as alleged by the Appellant, Ms. Norman. On October 22, 2013, Ms. Norman underwent a diagnostic laparoscopy performed by Appellee Dr. Maynard. Dr. Maynard is a practitioner with Appellee All About Women, P.A. The operative reports do not indicate any complications occurred during the procedure. However, immediately following the procedure Ms. Norman had sharp, intense pains in the center of her lower abdomen. She reported these

---

[1] *Norman v. All About Women, P.A.*, 2017 WL 5624303, at *2 (Del. Super. Ct. Nov. 16, 2017).

2

complaints to Dr. Maynard who suggested that pain from the procedure was to be expected. Symptoms persisted, however, and two days later Ms. Norman went to the Christiana Care emergency room. She felt dizzy, remained in pain, and was having a hard time holding herself up because of muscle weakness. She underwent a CT scan of her head to rule out a possible stroke and was discharged the same day with a diagnosis of dehydration.

On October 25, Ms. Norman's boyfriend was unable to wake her up and called 911. She was transported to Union Hospital by ambulance, still in pain and unable to control her muscles enough to sit up. The doctors at Union Hospital performed surgery and found that her bladder had been ruptured. They attributed the rupture to the diagnostic laparoscopy.

Ms. Norman filed an action in the Superior Court alleging medical negligence against Dr. Maynard and All About Women, P.A. She claimed Dr. Maynard was negligent by perforating her bladder and then failing to recognize and treat the injury before completing the procedure.

Ms. Norman retained Dr. Jeffrey Soffer, M.D. as her medical expert to provide an opinion on how Dr. Maynard breached the standard of care. Dr. Soffer is board certified in obstetrics/gynecology and serves as an attending physician in the Department of Obstetrics and Gynecology at Overlook Hospital in Summit, New

Jersey. He has done hundreds of diagnostic laparoscopies during the course of his career.

Dr. Soffer gave an opinion that Dr. Maynard provided substandard care during the course of Ms. Norman's procedure. He stated "it is incumbent on the operating surgeon to be always aware of the exact anatomic position of adjacent structures in order to avoid inadvertent injury. The bladder . . . [would have been] in plain view."[2] According to Dr. Soffer, Ms. Norman's bladder injury occurred during Dr. Maynard's placement of a secondary trocar.[3] Such placement, he says, should be done under direct visualization so as to "certainly avoid injury" and any resulting injury "represents careless and sloppy surgical technique." He further opined that the standard of care dictates that careful inspection of the operative site and adjacent structures, including the bladder, take place before the procedure is completed.

On February 7, 2017, Appellees filed a Motion *in Limine* to exclude Dr. Soffer's opinions on the grounds they lacked the requisite reliability under *Daubert v. Merrell Dow Pharmaeutials, Inc.*[4] and settled Delaware case law. They argued that Dr. Soffer's opinion that Dr. Maynard was negligent was based solely on the

---

[2] App. to Appellant's Opening Br. at A66.

[3] "[A] sharp-pointed instrument . . . used to puncture the wall of a body cavity and withdraw fluid or to introduce an endoscope." *Miller-Kean Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health*, https://medical-dictionary.thefreedictionary.com/trocar (last visited July 30, 2018).

[4] 509 U.S. 579, 595 (1993).

fact that an injury occurred. They further argued that Dr. Soffer did not articulate a standard of care or how Dr. Maynard deviated from a standard of care. In addition, they argued that Dr. Soffer's methodology in reaching his opinion failed under *Daubert* because he could not identify any medical literature or peer reviewed publications that he relied upon in formulating his opinion that Dr. Maynard had acted negligently.

The Superior Court agreed, noting that Ms. Norman failed to meet her burden because no evidence was presented that Dr. Soffer's opinion was "based on information reasonably relied upon by experts in the field."[5] The heart of the court's ruling is this:

> In this case, Ms. Norman has failed to meet her burden because no evidence has been presented that Dr. Soffer's opinion is 'based on information reasonably relied upon by experts' in his field. In fact, Dr. Soffer testified that he did not rely on any medical literature or peer reviewed publications in reaching his conclusion that Dr. Maynard violated the standard of care. Rather, Dr. Soffer's sole supporting contention is that, based on his own knowledge, the type of injury Ms. Norman suffered does not ordinarily occur in the absence of negligence. This contention in no way alludes to whether his analysis of the facts in this case is consistent with other experts in his field. Therefore, the Court must exclude Dr. Soffer's testimony, pursuant to the Court's five-part test set forth in *Smith v. Grief*.[6]

## STANDARD OF REVIEW

This Court reviews *de novo* the Superior Court's grant or denial of summary

---

[5] *Norman*, 2017 WL 5624303, at *2.
[6] *Id.* (citing to *Smith v. Grief*, 2015 WL 128004 (Del. Jan. 8, 2015)).

judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'[7]

## DISCUSSION

Ms. Norman contends the Superior Court erred by finding that Dr. Soffer's opinions were inadmissible. She believes he is qualified to give testimony on two separate issues of negligence: (1) whether Dr. Maynard's surgical technique during the diagnostic laparoscopy deviated from the standard of care; and (2) whether Dr. Maynard deviated from the standard of care by not identifying and treating the perforation of her bladder after it occurred. She contends Dr. Soffer is qualified to offer opinions on the standard of care based on his training, knowledge, and skill gained over twenty years of board certified practice in obstetrics and gynecology.

The Appellees make the arguments they made to the trial court, summarized above.[8] They also draw our attention to the following passage from Dr. Soffer's deposition testimony:

---

[7] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269-70 (Del. 2008)).

[8] The Appellees also argue that the Appellant has failed to comply with Supreme Court Rule 14(e) which requires that the Appellant's appendix include "the complete docket entries in the trial court arranged chronologically." However, it appears that the Appellant has included a complete list of docket entries at pages A1 to A19. To the extent the Appellees argue that the Appellant has not included copies of some parts of the record in her appendix, the argument is rejected. We are

6

Q: The sole basis for your opinion that Dr. Maynard used sloppy, to use your words, surgical technique, is the fact that an injury occurred, correct?
A: Yes.
Q: And the sole basis for your opinion that she missed that bladder injury during the operation is the fact that she had a bladder injury?
A: Yes.[9]

In another portion of the deposition, the Appellee's submit, Dr. Soffer "went so far as to assert that the fact that the injury was missed means there was inadequate inspection '[s]o that speaks for itself.'"[10] Answers such as these, the Appellees contend, show that Dr. Soffer's opinions are based on the fact that injury occurred and do not meet the test for admissibility. They contend that Dr. Soffer is required to provide a rationale for how Dr. Maynard deviated from the standard of care and he failed to do so.

If a witness is qualified as an expert by skill, experience, knowledge, training or education, he may offer an opinion and testify as to that opinion.[11] In a medical negligence case, an expert must be "familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify" in order to offer a standard of care opinion.[12] A strong preference exists for admitting evidence that

---

satisfied that the Appellant's appendix is sufficient to give us a "fair and accurate account of the context in which the claim of error occurred." Supr. Ct. R. 14(e).
[9] App. to Appellee's Answering Br. at B183–85.
[10] Appellee's Answering Br. at 8.
[11] D.R.E. 702.
[12] 18 *Del. C.* § 6854.

may assist the trier of fact.[13]   As such, expert opinions are appropriate when they will assist the trier of fact in understanding the relevant facts or the evidence.[14]

In his ruling, the Superior Court judge relied upon our order in *Smith v. Grief*.[15]   The expert in that case was a biomechanical engineer.   The question was whether the expert's testimony "should be excluded because her opinions were unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and D.R.E. 702."[16] Delaware Rule of Evidence 702 reads as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (a) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

We stated that the question presented in *Smith* should be determined using the following five factors:

> (1) the witness is qualified as an expert by knowledge, skill, experience, training or education; (2) the evidence is relevant; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[17]

---

[13] *Pavey v. Kalish*, 3 A.3d 1098 (Del. 2010) (citations omitted).
[14] *Id.*
[15] 2015 WL 128004 (Del. Jan. 8, 2015).
[16] *Id.* at *2.
[17] *Id.* (citing to *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 794 (Del. 2006)).

8

These factors were developed in response to *Daubert* and have appeared in a line of our cases.[18] The factor involved in this case is the third: "the expert's opinion is based upon information reasonably relied upon by experts in the particular field." The Superior Court appears to have interpreted this factor to require that the expert's opinion be based upon medical literature or peer reviewed publications or some other source which corroborates the expert's analysis. An opinion by a doctor "based on his own knowledge" was deemed insufficient.

We think that the Superior Court misinterpreted this third factor. The origin of the factor can be found in the following passage from *Daubert:*

> Throughout, a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules. Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'[19]

This makes clear that the third factor is derived from D.R.E. 703's provision that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." The third factor was thought of by the author of *Daubert* as a guard against the use of unreliable hearsay.

---

[18] *Smith,* 2015 WL 128004; *Bowen,* 906 A.2d 787; *Tolson v. State*, 900 A.2d 639, 645 (Del. 2006); *Eskin v. Carden*, 842 A.2d 1222, 1227 (Del. 2004); *Nelson v. State*, 628 A.2d 69, 74 (Del. 1993).
[19] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993).

9

The factor does not pertain to information which the expert has not relied on. In this case, the information relied on by Dr. Soffer are Ms. Norman's medical records and the depositions of Ms. Norman and Dr. Maynard. He arrives at his opinions by applying his training and experience to the facts of this case. The information relied on by Dr. Soffer is clearly sufficient under D.R.E. 703 to justify admission of his opinions under D.R.E. 702. Medical literature or peer reviewed publications may be useful factors in an appropriate case, and may be relevant to the defense in this case, but they have no bearing on the admissibility of Dr. Soffer's opinions.

The Appellees correctly state that no presumption or inference of medical negligence arises from the fact that an undesirable result occurred. We think, however, that when Dr. Soffer's deposition testimony is read as a whole, it is clear that he provided two opinions on the standard of care and Dr. Maynard's deviation from those standards. First, he attributes the cause of the perforation of Ms. Norman's bladder to the placement of a secondary trocar. He bases this opinion on the medical records provided by Union Hospital from the corrective surgery:

> I think what reinforces. . . this being a trocar injury, as opposed to a laser or cautery injury, is that [the Union Hospital Doctor] does not describe any cautery like effects in the perforations or rent. He says the fact he closed it directly without excising tissue. . . . [T]hey directly sowed [the perforation] without excising any tissue. That, to me, reinforces that this was a trocar injury.[20]

---

[20] App. to Appellant's Opening Br. at A35.

His deposition testimony includes his opinion that Dr. Maynard breached the standard of care by "push[ing] the trocars in too far" and being "a little too forceful," causing the trocar to go directly into the dome of the bladder.[21] The placement of this secondary trocar, he says, should be done under direct visualization and any injury to a nearby organ is a deviation from the standard of care:

> Dr. Maynard, and anyone doing laparoscopy surgery knows that the secondary trocars are put in under direct visualization. It is the job of the surgeon to watch every centimeter of that entry of that secondary trocar into the abdomen with care not to injure the bladder. That's what you are looking for. That's why you are doing it under what we call direct visualization. . . .These secondary trocars are not blind entries. You can see very clearly, and if you can't see very clearly, then you don't put them in.[22]

Second, Dr. Soffer says that Dr. Maynard breached the standard of care by not thoroughly inspecting the surgical area and discovering the perforation. He believes that had an adequate inspection been done, bleeding or a leakage of urine would have been seen.

The facts in this case have some similarity to the facts in *Balan v. Horner*.[23] The plaintiff there underwent a laparoscopic appendectomy. A second trocar, inserted under direct vision, lacerated the plaintiff's iliac artery. The plaintiff's medical expert testified that "[I do] not know exactly where Balan put [the second

---

[21] *Id.*
[22] *Id.* at A39.
[23] 706 A.2d 518 (Del. 1998).

11

trocar]. But I can say that he put it in the wrong place."[24] He further explained that "I know it was done incorrectly or we would not be here . . . ."[25] After a jury verdict in favor of the plaintiff, the defendant appealed, arguing that the plaintiff's expert opined that the doctor was negligent simply because of an unfavorable outcome. We rejected the defendant's argument, explaining that the opinion of the plaintiff's expert "was based on his analysis of the circumstances of this case, not mere speculation over the cause of a bad result."[26] The same can be said of Dr. Soffer's analysis in this case.

Dr. Soffer's deposition testimony, considered as a whole, is sufficient to establish the applicable standards of care, Dr. Maynard's deviations from those standards, and injury to Ms. Norman caused by those deviations. His testimony is admissible.

## CONCLUSION

The Superior Court's ruling which excluded Dr. Soffer's testimony and its grant of summary judgment are reversed and the matter is remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

[24] *Id.* at 521.
[25] *Id.*
[26] *Id.*

12