# SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: April 28, 2021
Date Decided: July 16, 2021

Leroy A. Tice, Esquire
LEROY A. TICE, ESQUIRE, P.A.
1203 North Orange Street
Second Floor
Wilmington, Delaware 19801

David G. Culley, Esquire
TYBOUT, REDFEARN & PELL
750 Shipyard Drive
Suite 400
Wilmington, Delaware 19801

RE: *Sharon and William Smack-Dixon v. Wal-Mart, Inc.*
C.A. No. N18C-09-220 PRW

Dear Counsel:

This Letter Order addresses the Defendant Wal-Mart, Inc.'s motion *in limine* to preclude the proffered testimony of Plaintiffs Sharon and William Smack-Dixon's medical expert, Nicholas Theodore, M.D. Upon review of the parties' pleadings, their arguments at the hearing, and the record in this case, Wal-Mart's motion *in limine* is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a slip-and-fall incident that occurred in the Seaford, Delaware Wal-Mart store on October 22, 2016.[1] Wal-Mart surveillance footage

---

[1] Def.'s Mot. *in Lim.* to Preclude Expert Test. of Nicholas Theodore, M.D. ¶ 1, Sept. 11, 2020 (D.I. 40) [hereinafter Def.'s Mot.].

captures Mrs. Smack-Dixon's "right foot slipping on an unknown substance; her left leg bending behind her causing her to perform a near 'split'; and her falling to the floor where she came to rest on her left hip."[2] Mrs. Smack-Dixon is a 64-year-old woman who, according to plaintiffs, only suffered from the usual age-related aches and pains prior to the incident.[3] After the incident, Mrs. Smack-Dixon reports she has suffered progressively debilitating lower back and bilateral hip pain, among other related physical complaints.[4]

In November 2018, Mrs. Smack-Dixon was evaluated by Ali Bydon, M.D., at Johns Hopkins Hospital.[5] Following this evaluation, review of pertinent medical records, and imaging studies, an L3-L5 lumbar fusion was recommended.[6] On December 19, 2018, Dr. Bydon and Nicholas Theodore, M.D., performed the L3-L5 instrumented fusion, utilizing Dr. Theodore's newly developed robotic guidance technology.[7] Dr. Theodore, because of his expertise in the use of robotic technology

---

[2] Pl.'s Opp'n to Def.'s Mot. *in Lim.* to Preclude Expert Test. of Nicholas Theodore, M.D. ¶ 5, Mar. 1, 2021 (D.I. 49) [hereinafter Pl.'s Opp'n].

[3] *Id.*

[4] *Id.*

[5] Pl.'s Opp'n ¶ 6.

[6] *Id.*, Ex. A (Johns Hopkins Medical Records).

[7] *Id.*

for spine surgery, led the procedure.[8] Dr. Theodore's Operative Report records that the reasons for surgery were "severe intractable lower back pain" and imaging that revealed "marked disease and destruction of the facet joints bilaterally at L3-L4 and L4-L5 with fluid in the facets and evidence of offset instability."[9]

Six months later, in June 2019, Joshua Hornstein, M.D., of Rothman Orthopaedics, examined Mrs. Smack Dixon.[10] He noted continuing bilateral hip and left groin pain.[11] But he did confirm that the lumbar spine surgery had relieved Mrs. Smack-Dixon's bilateral sciatic pain.[12] Further treatment was deemed necessary due to Dr. Hornstein's diagnoses of bilateral gluteal tendinitis and bilateral bursitis.[13] As a result, Dr. Hornstein performed an endoscopy and trochanteric bursectomy on Mrs. Smack-Dixon's left side in July 2019.[14] He performed the same

---

[8] Pl.'s Opp'n ¶ 6.

[9] *Id.*, Ex. A.

[10] Pl.'s Opp'n ¶ 7, Ex. B (Rothman Orthopaedics Medical Records).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

on her right side, along with a gluteal tendon repair the following month.[15]

Through this suit, Mrs. Smack-Dixon seeks monetary damages for injuries she allegedly sustained to her lower back and hips because of the fall in Wal-Mart.[16] Mrs. Smack-Dixon filed her complaint in September 2018, accusing Wal-Mart of negligence.[17] That complaint was amended to add Mr. Smack-Dixon's loss of consortium claim.[18] Trial was to occur in April 2020 but was pushed to November 2021 by the court closures occasioned by the COVID-19 pandemic.[19]

In anticipation of the upcoming trial, Wal-Mart filed the instant motion *in limine* to preclude Dr. Theodore from testifying as Mrs. Smack-Dixon's medical expert.[20] The Smack-Dixons filed their written opposition,[21] and the Court has heard the parties' arguments on this motion.[22] So, the motion is now ripe for decision.

---

[15] *Id.*

[16] Def.'s Mot. ¶ 1.

[17] Pl.'s Opp'n ¶ 2.

[18] *Id.*

[19] *Id.* ¶ 4; Notice, May 26, 2021 (D.I. 58).

[20] Def.'s Mot.

[21] Pl.'s Opp'n.

[22] Judicial Action Form (D.I. 57).

## II. APPLICABLE LEGAL STANDARDS

Delaware Rule of Evidence 702 governs the admission of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case.[23]

Delaware's Rule 702 is substantially similar to Rule 702 of the Federal Rules of Evidence.[24] The now well-understood bounds of the latter were interpreted and explained in *Daubert v. Merrel Dow Pharmaceaticals, Inc.*,[25] and *Kumho Tire Co., Ltd. v. Carmichael*.[26] And Delaware has expressly adopted the holdings in *Daubert* and *Kumho* to interpret our own analog rule.[27]

A trial judge must ensure that expert testimony is both relevant and reliable

---

[23] D.R.E. 702.

[24] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del. 2006).

[25] 509 U.S. 579 (1993).

[26] 526 U.S. 137 (1993).

[27] *Bowen,* 906 A.2d at 794 (citing *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 522 (Del. 1999)).

when its admission is challenged.[28]  Consistent with *Daubert*, Delaware requires the

gatekeeping judge to engage in a five-step analysis to determine the admissibility of

proffered expert testimony.[29]  To properly determine admissibility, the judge must

ensure that:

(1)   the witness is qualified as an expert by knowledge, skill, experience, training, or education;

(2)   the evidence is relevant;

(3)   the expert's opinion is based on information reasonably relied upon by experts in the particular field;

(4)   the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and

(5)   the expert testimony will not create unfair prejudice or confuse or mislead the jury.[30]

The party seeking to introduce the expert testimony must shoulder the

burden of establishing its admissibility by a preponderance of the evidence.[31]  And

---

[28]   *Daubert*, 509 U.S. at 597.

[29]   *Bowen*, 906 A.2d at 795.

[30]   *Id.*

[31]   *Id.*

"[a] strong preference exists" for admitting expert opinions "when they will assist the trier of fact in understanding the relevant facts or the evidence."[32]

### III. DISCUSSION

Wal-Mart seeks to exclude Dr. Theodore's expert opinion regarding causation on two grounds: (1) Dr. Theodore's competency to give a causation opinion about Mrs. Smack-Dixon's hip injuries and (2) the reliability of his spinal and hip causation opinions, which, according to Wal-Mart, were rendered without properly accounting for certain fundamental facts. Given these grounds of contention, the Court must focus mostly on the first and third factors mentioned above—*i.e.*, Dr. Theodore's competency to testify on the hip issues and the reliability of his opinions on the cause of all the injuries alleged and their relation to the Wal-Mart fall.

#### A. Dr. Theodore's Expert Opinions Are (1) Relevant, (2) Will Assist the Fact Finder, and (3) Will Not Occasion Unfair Prejudice.

No doubt, Dr. Theodore's expert opinions satisfy the second (relevance), fourth (assistance to the fact finder), and fifth (avoidance of unfair prejudice) factors that are examined under Delaware Rule 702's five-step admissibility analysis.[33] Expert testimony is relevant if it assists the fact finder in "understand[ing] the

---

[32] *Delaware ex. Rel. French v. Card Compliant, LLC*, 2018 WL 4151288, *2 (Del. Super. Ct. Aug. 29, 2018) (quoting *Norman v. All About Women, P.A.*, 193 A.3d 726, 730 (Del. 2018)).

[33] *Bowen*, 906 A.2d at 795.

evidence or. . . determin[ing] a fact in issue."[34]   And evidence creates unfair prejudice when it invites a decision on an improper basis, commonly, emotion rather than reason.[35]

Here, a key issue is whether Mrs. Smack-Dixon's slip-and-fall at the Wal-Mart was the proximate cause of her hip and spinal injuries.   Dr. Theodore's testimony is relevant to this determination because it will assist the fact finder in understanding her prior medical history, the operations performed, and the cause of her alleged ensuing pain and physical limitations.   And there has been no suggestion by Wal-Mart that Dr. Theodore's testimony will create any unfair prejudice of the sort that might offend Rule 702.[36]   The jury may credit Dr. Theodore's opinions and medical analysis or it may not.   But there is nothing in the record to suggest his testimony will appeal to or persuade the jury on any improper basis. Whatever persuasive power might lie in his opinions derives from the coherence of his testimony in explaining Mrs. Smack-Dixon's alleged injuries.

---

[34]   *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702).

[35]   *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2020 WL 233333, at \*5 (Del. Super. Ct. Jan. 10, 2020).

[36]   *See*, *e.g.*, *id.* at \*5 (observing that Rule 702 "[e]vidence appeals to an unfair prejudice when it tends to suggest decision on an improper basis, commonly but not necessarily emotion rather than reason.")

### B. DR. THEODORE IS COMPETENT TO GIVE HIS CAUSATION OPINION ABOUT MRS. SMACK-DIXON'S HIP INJURIES.

Dr. Theodore is competent to give his causation opinion about Mrs. Smack-Dixon's hip injuries based on his knowledge and expertise in neuro-, orthopaedic, and spine surgery, his extensive medical education, and his substantive review of his patient's  pre- and post-injury medical records.  A trial judge acts as a gatekeeper in deciding whether an expert "has a reliable basis in the knowledge and experience of [the relevant] discipline."[37]  Delaware recognizes that an expert may be qualified by credentials outside of her formal training or designated specialty, and in determining admissibility, her qualifications must be scrutinized with "due regard" for the specialization of modern science.[38]  And certainly, where appropriate, an expert might be rejected when her education, training, and experience doesn't align with the subject matter of the anticipated testimony.[39]

---

[37]  *Bowen*, 906 A.2d at 794 (Del. 2006)(citing *M.G. Bancorportation, Inc. v. Le Beau*, 737 A.2d 513, 522 (Del. 1999)).

[38]  *Id.* at 796.

[39]  *E.g.*, *Spencer v. Wal-Mart Stores East, LP*, 930 A.2d 881, 888-89 (Del. 2007) (affirming this Court's finding that a forensic architect was not qualified as an expert on ice and snow removal).

Concerning Mrs. Smack-Dixon's alleged hip injuries, Wal-Mart challenges that Dr. Theodore is not competent to give his causation opinion,[40] despite previously diagnosing trochanteric bursitis in patients[41] and being a Professor in, among other specialities, Orthopedic Surgery.[42]  The Court cannot agree.

Dr. Theodore holds an M.S. in Physiology and Biophysics from Georgetown University, as well as an M.D. from Georgetown University School of Medicine.[43] His postdoctoral work commenced thirty years ago with an internship in General Surgery at the National Naval Medical Center and has included, among other accomplishments, a Spinal Surgery Fellowship at Barrow Neurological Institute.  He is board certified in Neurological Surgery.[44]

Dr. Theodore's professional experience spans from Lieutenant Commander in the Medical Corps of the United States Navy Reserve to current Chairman of the Head, Neck, and Spine Committee of the National Football League.[45]

---

[40]  Def.'s Mot. ¶ 14.

[41]  Pl.'s Opp'n, Ex. E at 48-49.

[42]  *Id.* ¶ 10.

[43]  *Id.* ¶ 11, Ex. F (Curriculum Vitae of Nicholas Theodore, M.D.).

[44]  *Id.*

[45]  *Id.*

In 2016, he became affiliated with Johns Hopkins Hospital. He has an appointment in orthopedic surgery[46] and presently serves as a Professor in Neurosurgery, Professor of Orthopedic Surgery, Professor of Biomedical Engineering, Director of the Neurological Spine Program; and Co-Chair of the Carnegie Center of Innovation, among other roles.[47]

When Dr. Theodore was questioned about his competency to testify about Mrs. Smack-Dixon's hip injuries, he noted his appointment and professorship in orthopedic surgery, and stated that it is common, in his spinal practice, for patients to have both back and hip pain.[48] And he noted, from a diagnostic standpoint, that he identifies hip problems all the time and refers those patients out to hip surgeons for further care.[49] Additionally, Dr. Theodore stated he has diagnosed Mrs. Smack-Dixon's specific hip issue—trochanteric bursitis—in patients before.[50] He was able to explain the symptoms and give a description of the procedure Dr. Hornstein

---

[46] Pl.'s Opp'n, Ex. E at 43 (Nicholas Theodore, M.D. Dep.).

[47] Pl.'s Opp'n, Ex. F.

[48] Pl.'s Opp'n, Ex. E at 43-45.

[49] *Id.*

[50] *Id.* at 48-49.

performed on Mrs. Smack-Dixon.[51]  Dr. Theodore's competency in this particular case is further supported by his review of over 1,900 pages of Mrs. Smack-Dixon's pre- and post-injury medical records;[52] this includes Dr. Hornstein's office and operative notes, which Dr. Theodore relied upon in forming his hip causation opinion.[53]

Accordingly, Dr. Theodore's education, training, and experience align with the subject matter of the anticipated testimony.  And his professional and practical expertise constitute the "knowledge, skill, experience, training, or education"[54] necessary to give an expert opinion on Mrs. Smack-Dixon's hip injuries despite his own now-specialized surgical practice concentrating on the spine.[55]

### C. DR. THEODORE'S SPINE AND HIP CAUSATION OPINIONS ARE RELIABLE; THEY ARE GROUNDED ON THE FUNDAMENTAL FACTS OF THIS CASE.

Dr. Theodore's spine and hip causation opinions are reliable because he is aware of the relevant fundamental facts and provides a factual basis for his opinion.

---

[51]  *Id.*

[52]  *Id.* ¶ 9.

[53]  *Id.*

[54]  D.R.E. 702.

[55]  Pl.'s Opp'n, Ex. E at 43.

Reliable expert testimony is premised on scientific or specialized knowledge, which requires the testimony to be grounded in scientific methods and procedures and "supported by appropriate validation—i.e., 'good grounds,' based on what is known."[56]

Many scientific, technical, or specialized fields are not subject to peer review and publication, which is why the test of reliability is "flexible." Rigid application of the *Daubert* factors just cannot be engaged to determine testimonial reliability in every field of expertise.[57] Even with all the advances of medical science, the practice of medicine remains an art, and a diagnosis in the practice of clinical medicine "is not an exact science."[58]

---

[56]  *Daubert*, 509 U.S. at 590.

[57]  *Henlopen Hotel*, 2020 WL 233333, at *3.

[58]  *State v. McMullen*, 900 A.2d 105, 114 (Del. Super. Ct. 2006); *see also Moore v. Ashland Chem.*, 126 F.3d 679, 688-690 (5th Cir. 1997), *vacated on reh'g en banc*, 151 F.3d 269 (5th Cir. 1998) ("First, the goals of the disciplines of clinical medicine and hard Newtonian science are different. . . . Second, the subject matter and conditions of study are different. . . . Finally, clinical medicine and hard science have marked different methodologies. . . . In sum, hard Newtonian scientific knowledge . . . is knowledge of a particular and limited kind. . . . Although clinical medicine utilizes parts of some hard sciences, clinical medicine and many of its subsidiary fields are not hard sciences. . . . Consequently, the *Daubert* factors, which are hard scientific methods selected from the body of hard scientific knowledge and methodology generally are not appropriate for use in assessing the relevance and reliability of clinical medical testimony."). The Fifth Circuit's discussion of the significant differences between disciplines in "hard science" and clinical medicine still holds true even though the decision in that case was ultimately vacated. *Id.*

In clinical medicine, standard practice for diagnosing a patient and establishing cause is through differential diagnosis.[59] Differential diagnosis refers to the process of determining which diseases the patient is suffering from by comparing various competing diagnostic hypotheses with the clinical findings.[60] A physician may reach a reliable differential diagnosis without performing a physical examination himself, and it is acceptable for a physician to arrive at a diagnosis by relying on examinations and tests performed by other medical practitioners.[61]

Again, a gatekeeping judge has "broad latitude" to determine whether an expert's proffered opinion is based upon the "proper factual foundation and sound methodology."[62] This "proper factual foundation" language has been distilled from Delaware Rule 702.[63] To meet the criterion for a "proper factual foundation," an

---

[59]  *McMullen,* at 116; *see also Bowen v. E.I. duPont de Nemours and Co., Inc.,* 2005 WL 1952859, at *10 (Del. Super. Ct. May 9, 2005) (noting differential diagnosis is a standard practice for establishing cause in clinical medicine).

[60]  *McMullen,* at 116.

[61]  *Id.* at 117; *State v. Salasky,* 2013 WL 5487363, at *26 (Del. Super. Ct. Sept. 26, 2013).

[62]  *Russum v. IPM Development Partnership LLC*, 2015 WL 2438599, at *2 (Del. Super. Ct. May 21, 2015).

[63]  *Russum*, 2015 WL 2438599, at *2.

expert's opinion must be based on "facts" and not "suppositions."[64]  When applied to a medical expert, a causation opinion is admissible when it's "based on his analysis of the circumstances . . . not mere speculation over the cause."[65]  And a proponent need only show by a preponderance of the evidence that her expert's opinions are reliable, not that they are correct.[66]  So, this Court's Rule 702 reliability examination must focus on principles and methodology and not on the resultant conclusions.[67]

Delaware courts generally recognize that challenges to the "factual basis of an expert opinion go[ ] to the credibility of the testimony, not the admissibility, and it is for the opposing party to challenge . . . the expert opinion on cross-examination."[68]  "The different depth with which [an expert] pursued particular lines

---

[64]  *Id.* at 3.

[65]  *Norman*, 193 A.3d at 732.

[66]  *State v. McMullen*, 900 A.2d 105, 114 (Del. Super. 2006) (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3d Cir. 1994).

[67]  *Henlopen Hotel*, 2020 WL 233333, at *2 ("At bottom, the Court's examination of an expert's opinion must be solely focused on principles and methodology, not on the conclusions they generate.") (cleaned up) (quoting *Tumlinson v. Advanced Micro Devices*, 81 A.3d 1264, 1269 (Del. 2013)).

[68]  *Perry v. Berkley*, 996 A.2d 1262, 1271 (Del. 2010); *Hodel v. Ikeda*, 2013 WL 226937, at *4 (Del. Super. Ct. Jan. 18, 2013); *see also Daubert*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citation omitted)); *Russum*, 2015 WL 2438599, at *3.

of investigation and the different assumptions they made are readily subject to cross-examination and to evaluation by the fact finder for credibility and weight."[69] But an expert's testimony will only be excluded in the narrow circumstance where he is shown to have completely neglected the core facts of the case.[70] And under Delaware Rule 702, a medical doctor's opinion "based on his own knowledge" and informed by his review of a patient's records may certainly be sufficient to clear the *Daubert/Bowen* reliability threshold.[71] To be sure, the thorough review of treatment records Dr. Theodore engaged in is a common and generally accepted method used by medical experts to divine causation of a given condition.

According to Wal-Mart, both Dr. Theodore's hip and spinal opinions are rendered with too little knowledge or consideration of certain fundamental facts. Wal-Mart says that Dr. Theodore's understanding of Mrs. Smack-Dixon's pre-injury history for both her hip and spinal injuries is vague and limited to the mere fact she previously reported having spinal and hip pain.[72]

---

[69] *Henlopen Hotel*, 2020 WL 233333, at \*4; *Perry v. Berkley*, 996 A.2d 1262, 1271 (Del. 2010) (noting cross-examination rather than exclusion can be the proper method of exploring the bases of an expert's opinion and the weight to be ascribed thereto).

[70] *Russum*, 2015 WL 2438599, at \*3.

[71] *E.g.*, *Norman*, 193 A.3d at 731-32.

[72] Def.'s Mot. ¶ 14.

Concerning Mrs. Smack-Dixon's lower back pain, Dr. Theodore acknowledged in his deposition that, in his assessment, "episode" meant an "entire period of time," and not a single incident.[73] So, Dr. Theodore did consider the multiple times Mrs. Smack-Dixon's complained of lower back pain but concluded it was caused by a single prolonged span of muscle spasm and detected no recurring theme of disability.[74]

Concerning Mrs. Smack-Dixon's hip injuries, Dr. Theodore agrees with Wal-Mart's experts that Mrs. Smack-Dixon's pre-injury bilateral hip problems were significant and further agrees that she suffered injury to her right hip because of the slip-and-fall.[75] As to the left hip, however, the experts disagree on whether the slip-and-fall aggravated her underlying hip conditions warranting the bilateral bursectomies.[76]

---

[73] Pl.'s Opp'n, Ex. E at 53 (Nicholas Theodore, M.D. Dep.).

[74] *Id.* ¶ 13.

[75] *Id.* at 17.

[76] *Id.* at 18.

Wal-Mart summons two decisions—*Perry v. Berkley*[77] and *Bell v. Fisher*[78]—where this Court found the proffered experts' ignorance of significant pre-injury history compelled exclusion. But the exclusion of the *Perry* and *Bell* experts resulted from the rather peculiar circumstance in each where the proffered expert was wholly unaware of the fundamental facts of the plaintiff's relevant prior medical history.[79]

But that's not what's happening here. No, Wal-Mart's quibble here is with Dr. Theodore's interpretation of Mrs. Smack-Dixon's prior medical history, not any ignorance of it.

Dr. Theodore bases his spine and hip causation opinions on his preoperative questioning, his review of over 1,900 pages of Mrs. Smack-Dixon's prior medical history, and on his knowledge and expertise in the fields of orthopedic and

---

[77] Def.'s Mot. ¶ 12.

[78] *Id.*

[79] *Perry*, 996 A.2d at 1271 (plaintiff's "prior medical history was pivotal to the issue of whether the car accident caused her back injuries" and given her medical expert's "complete lack of knowledge of the[se] most fundamental relevant facts" his causation opinion was properly deemed inadmissible under *Daubert* and Rule 702); *Bell*, 2013 WL 1120867, at *2 (Del. Mar. 18, 2013) (expert's conclusion that defendant surgeon's procedure caused plaintiff's neck and spinal injuries was predicated on expert's wholly mistaken belief that plaintiff had no history of neck and spinal injuries before the procedure, and this "erroneous factual premise rendered" his medical opinion about the cause of plaintiff's injuries "(in the language of *Perry* )'completely incorrect'" and his testimony thereon excludable), *aff'g*, 2010 WL 3447694 (Del. Super. Ct. Aug. 30, 2010).

neurosurgery.[80]    Dr. Theodore provided detailed analysis about why certain procedures were elected in his initial expert report, his addendum thereto, and in his deposition.[81]    Additionally, Dr. Theodore explains the factual bases for his conclusions regarding Mrs. Smack-Dixon's prior medical history and gives detailed explanations for every disagreement he has with Wal-Mart's expert's opinion.[82] Both Dr. Theodore and Wal-Mart's experts relied on the same methodology of differential diagnosis by reviewing Mrs. Smack-Dixon's extensive medical history to reach their opposing opinions.    At bottom, Wal-Mart flatly disagrees with the causation opinions Dr. Theodore derives from that same evaluative exercise.    But, again, a proffered expert's testimony can't be excluded just because an opponent quarrels with his conclusions.[83]

---

[80]    Pl.'s Opp'n ¶ 9.

[81]    *Id.*

[82]    Pl.'s Opp'n, Ex. E at 26-27, 39-40, 35-37, 32-34, 51-53, 54-57, 58-62.

[83]    *See Daubert* 509 U.S. at 595 (1993) (To pass on the "evidentiary relevance and reliability" of a given expert's opinion "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *see also In re Paoli,* 35 F.3d at 733 (3d Cir. 1994) (Proponents "do not have  to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable.") (emphasis in original).

### IV. CONCLUSION

Dr. Theodore's testimony is admissible because it is relevant, reliable, and will aid the fact finder in determining whether Mrs. Smack-Dixon's slip-and-fall was the proximate cause of her back and hip injuries. Dr. Theodore is competent to give his causation opinion about Mrs. Smack-Dixon's hip injuries because his education, training, and experience constitute the "knowledge, skill, experience, training, or education"[84] necessary to give an expert opinion in his field. Dr. Theodore's testimony is reliable because he is aware of the fundamental facts of the case and applies that understanding to his causation opinion that Mrs. Smack-Dixon's slip-and-fall caused both her spine and hip injuries. The significance Dr. Theodore affords to her prior medical history is an issue for cross-examination and for evaluation by the fact finder when judging the credibility of his expert testimony.

Accordingly, Wal-Mart's motion *in limine* to preclude the proffered expert testimony of Dr. Nicholas Theodore is **DENIED.**

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary
cc: All Counsel via File and Serve

---

[84] D.R.E. 702.