# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JAMES DEAN WALTON, SR.,  )
LINDA JANE MCGEE, KENDRA  )
ADAIR as personal representative for )
the estate of JAMES D. WALTON, JR., )
and KENNETH A. BRYANT, III  )
as personal representative for the  )
estate of RICHARD GREGORY  )
CHITTICK,  )
          ) C.A. No. N18C-04-314 FWW
  Plaintiffs,    )
          )
          )
   v.     )
          )
ROGER LOUIE COLE,   )
          )
  Defendant.   )
          )

Submitted: December 28, 2021
Decided:  January 3, 2022

*Upon Defendant's Motion to Exclude Plaintiffs' Claims for Future Lost Savings*
**GRANTED IN PART and DENIED IN PART.**

## <u>ORDER</u>

Lawrance Spiller Kimmel, Esquire, Brian S. Legum, Esquire, Kimmel, Carter, Roman, Peltz & O'Neill P.A., 56 W. Main St. Fourth Floor, Newark, DE, 19702, Attorneys for Plaintiffs.

Daniel P. Bennett, Esquire, Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, 919 North Market Street, Suite 200, Wilmington, DE, 19801, Attorney for Defendant.

**WHARTON, J.**

This 3rd day of January 2022, upon consideration of Defendant Roger Louie Cole's ("Cole") Motion to Exclude Plaintiffs' Claims for Future Lost Savings ("Motion"); the Response of Plaintiffs James Dean Walton, Sr. ("Walton, Sr."), Linda Jane McGee ("McGee"), Kendra Adair ("Adair")[1], and Kenneth Bryant, III ("Bryant"), the latter two as personal representatives for the estates of James D. Walton, Jr. ("Walton, Jr."), and Richard Gregory Chittick's ("Chittick") respectively (collectively "Plaintiffs"); and the parties' supplemental memoranda as ordered by the Court, it appears to the Court that:

1.      On April 30, 2018, Plaintiffs brought this wrongful death action against Cole.[2]  Plaintiffs claim that Cole operated a motor vehicle in a negligent, reckless, and/or careless manner resulting in the deaths of Walton, Jr. and Chittick.[3]  In particular Walton, Sr. and McGee claim they are entitled to damages due to the wrongful death of their son, Walton, Jr., pursuant to 10 *Del. C.* §§ 3722 and 3724.[4] Bryant, in his capacity as the personal representative for the estate of Richard Gregory Chittick, pursuant to 10 *Del. C.* §§ 3701, 3702, 3704, and 3707, claims he is entitled to recover all damages that would be due to Chittick.[5]  Adair makes a

---

[1] Kendrick Adair replaced Nicholas Cavnar as the personal representative of the Estate of James Walton, Jr.
[2] Compl., at 1, D.I. 1.
[3] *Id.*
[4] *Id.,* at 4.
[5] *Id.,* at 3-4.

similar claim as the personal representative for Walton. Jr.'s estate.[6]   Bryant, in his capacity as representative for Chittick's estate, also claims damages for the wrongful death of Walton, Jr., Chittick's spouse, pursuant to 10 Del. C. §§ 3722 and 3724.[7] Adair makes a similar claim on behalf of Walton, Jr.'s estate for Chittick's wrongful death.[8]

2.      For purposes of this motion, it is sufficient to say that Walton, Jr. and Chittick, who were married to each other, died simultaneously when they were struck by a vehicle operated by Cole.  A fuller exposition of the facts is found in this Court's Opinion on Cole's Motion for Summary Judgment.[9]

3.      On July 13, 2021, Cole moved to exclude Plaintiffs' claims for Future Lost Savings based on: (1) a lack of standing to bring suit on the part of the estates' personal representatives to claim damages as a result of wrongful death of the spouse of each estate's decedent; and (2) unsubstantiated and speculative expert economic opinions as to the decedents' future savings.[10]  Specifically, Cole argues that each decedent's will presumes that his spouse predeceased him if the two die within 60 days of each other.[11]  Thus, if Chittick predeceased Walton, Jr., Chittick's estate

---

[6] *Id.* at 3.
[7] *Id.*, at 4.
[8] *Id.*
[9] 2020 WL 4784599 (Del. Super. 2020).
[10] Def's. Mot. to Exclude, D.I. 50.
[11] *Id.*

3

cannot bring a claim for Walton, Jr.'s wrongful death because Chittick is presumed to have died before Walton, Jr., and vice versa.[12] Cole also claims that Plaintiffs' expert economist's testimony should be excluded because he failed to properly account for each decedent's living expenses in calculating future savings.[13]

4.    Plaintiffs responded on August 4, 2021.[14] They argue that they have standing as beneficiaries under Delaware's Wrongful Death Statute and that Cole's reliance on Title 12 of the Delaware Code dealing with decedents' estates is misplaced.  Further, they argue that their expert, Dr. Lawrence Spizman ("Dr. Spizman"), did account for future personal expenses, and, thus, his opinion testimony regarding future savings is admissible.[15]

5.    In his motion, Cole only challenges the standing of the personal representatives of the estates to sue for the wrongful death of each decedent's spouse. Wrongful death actions are governed by Chapter 37 of Title 10 of the Delaware Code.  That chapter provides that all causes of action that a decedent had at the time of his death survive to the executors or administrators of the person to whom the cause of action accrued.[16]  A wrongful death "action under this subchapter shall be

---

[12] *Id.*
[13] *Id.*
[14] Pls.' Resp. Mot. to Exclude, D.I. 52.
[15] *Id*.
[16] 10 *Del. C.* § 3701.

for the benefit of the spouse, parent, child and siblings of the deceased person.[17] The Superior Court has held that "all of those who are specified in §3724(a), namely, wife, husband, parents and children, are entitled to recover their losses in those categories."[18] Although Walton and Chittick are deceased, 10 *Del. C.* § 3704 contemplates that their personal representatives may properly assert wrongful death claims on their behalf:

> No action brought to recover damages for injuries to the person by negligence or default shall abate by reason of the death of the plaintiff, but the personal representatives of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction.

6.      Cole argues in his Motion that Title 12 of the Delaware Code governs who has standing to bring this wrongful death action.  He argues:  (1) Title 12 *Del. C.* §§ 701, 702, and 706 govern the disposition of property where the disposition of property depends on the priority of death, except where a will makes that determination; (2) the wills of each decedent provide that if the decedents should die within 60 days of each other they are presumed to have predeceased each other; and (3) since each spouse is presumed to have died before the other, neither can sue for the wrongful death of the spouse who is presumed to have survived him.[19]

---

[17] 10 *Del. C.* §3724(a).
[18] *Fall v. Evans*, No. C.A. 85C-FE-30, 1989 WL 31558, at *5 (Del. Super. Ct. Mar. 28, 1989), *aff'd*, 577 A.2d 752 (Del. 1990) (citing *Sach v. Kent General Hosp.,* 518 A.2d 695, 696 (Del. Super. 1986).
[19] Def.'s Mot. to Exclude, at 3-6. D.I. 50.

5

7. On November 28th, the Court directed the parties to submit supplemental memoranda addressing three questions: (1) What standard should the Court employ to address the request to exclude the spousal wrongful death claims – the Rule 12(b)(6) dismissal standard, the Rule 56 summary judgment standard, or some other standard; (2) Do the parties agree that James Dean Walton, Jr. and Richard Gregory Chittick died simultaneously; and (3) Under Delaware's Wrongful Death Statute, must a plaintiff suing for the wrongful death of his spouse survive the deceased spouse?[20]

8. They parties have answered. Cole responds that the standard the Court should employ is two-fold. First, regarding standing, because matters outside of the pleadings must be considered, the Court should employ the standard applicable to motions for summary judgment.[21] Regarding, Plaintiffs' expert witness' testimony, the Court should employ the familiar *Daubert* standard.[22] Plaintiffs agree.[23] Cole answers the other two questions affirmatively – both decedents died simultaneously and a plaintiff suing for the wrongful death of his spouse must survive his spouse.[24] Plaintiffs agree that there is no evidence that Walton, Jr. and Chittick died other than

[20] D.I. 56.
[21] Def.'s Supp. Sub., D.I. 57.
[22] *Id.*
[23] Pls.' Supp. Sub., D.I. 60.
[24] Def.' Supp. Sub., D.I. 57.

6

simultaneously.[25] Plaintiffs contend that even though the deaths were simultaneous, each decedent had a statutory wrongful death claim for his spouse's death at the time of his own death which survived.[26] They did not answer the Court's question directly.

9. Because matters outside of the pleadings must be considered to resolve the motion the Court will employ the standard applicable to motions for summary judgment. Super. Ct. Civ. R. 56(c) provides that summary judgment is appropriate where there is "no genuine issue as to any material fact…and the moving party is entitled to a judgment as a matter of law."[27] The moving party initially bears the burden of establishing both of these elements; if there is such a showing, the burden shifts to the non-moving party to show that there are material issues of fact for resolution by the ultimate fact-finder.[28] The Court considers the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in determining whether to grant summary judgment.[29] Summary judgment will be appropriate only when, upon viewing all of the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine

---

[25] Pls.' Supp. Sub., D.I. 60.
[26] *Id.*
[27] Del. Super. Ct. Civ. R. 56(c).
[28] *See, More v. Sizemore*, 405 A.2d 679, 680 (Del. 1979) (citations omitted).
[29] Del. Super. Ct. Civ. R. 56(c).

7

issue of material fact.[30] When material facts are in dispute, or "it seems desirable to inquire more thoroughly into facts to clarify the application of the law to the circumstances, summary judgment will not be appropriate."[31] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[32]

10. The wills of both Walton, Jr. and Chittick create a fictive presumption that each predeceased the other. In truth, they died simultaneously, a fact upon which the parties agree. While the creation of survivorship presumptions may be helpful in estate planning, asset distribution, and probate efficiency, it is not clear why such presumptions should apply to wrongful death actions, which are governed by separate statutes. Nevertheless, the Court need not resort to Title 12 to determine that the estates may not sue for the wrongful deaths of their decedents' spouses.

11. Each decedent must have had an existing cause of action for the wrongful death of his spouse at the time of his own death in order for his estate's personal representative to pursue that claim.[33] Obviously, someone who predeceases his spouse may not sue for the subsequent wrongful death of that spouse. Thus, the

---

[30] *Singletarry v. Amer. Dept, Ins. Co.*, 2011 WL 607017 at *2 (Del. Super. 2011) (citing *Gill v. Nationwide Mut. Inc. Co.*, 1994 WL 150902 at *2 (Del. Super 1994)).
[31] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[32] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[33] 10 *Del. C.* § 3701.

8

viability of a wrongful death action for the death of a spouse depends on establishing that the spouse bringing suit had a claim at the time of his death. Because the deaths were truly simultaneous, neither personal representative is able to establish survivorship necessary to support a viable claim. The spousal wrongful death claims did not survive to be pursued by personal representatives because they did not exist. Cole's motion to dismiss the spousal wrongful death claims is **GRANTED.**

12. In view of the Court's ruling on standing, it may be unnecessary to determine the admissibility of Dr. Spizman's testimony. However, in the event Plaintiffs intend to offer his testimony in connection with the remaining wrongful death claims, the Court addresses that portion of Cole's Motion seeking to exclude Dr. Spizman's opinion testimony. Cole argues that Dr. Spizman's opinions are not admissible because his findings are based on speculation, and thus, are neither relevant nor reliable.[34] Specifically, Cole claims Dr. Spizman failed to use any evidence of the decedent's actual living expenses when analyzing future income, and therefore, his methodology was unreliable.[35] Cole asserts that Dr. Spizman's use of 13.50% of income as a measurement of "personal consumption" does not comport with Delaware law.[36]

---

[34] Def's. Mot. to Exclude, at 8, D.I. 50.
[35] *Id.* at 10.
[36] *Id.* at 11.

13. "Damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death."[37] In determining the amount of an award, the court or jury may consider "[d]eprivation of the expectation of pecuniary benefits to the … beneficiaries that would have resulted from the continued life of the deceased[.]"[38] Delaware courts have held the Wrongful Death Statute allows "the recovery only of that portion of the decedent's lost earnings that would have been saved, over and above the decedent's spending on his maintenance, and passed on to his estate.[39]

14. The admissibility of expert testimony is governed by the Delaware Rules of Evidence. Specifically, under D.R.E. 702, a qualified expert may testify in the form of an opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and

---

[37] 10 Del. C. §3724(c).
[38] 10 Del. C. §3724(d)(1).
[39] *Ferguson v. Valero Energy Corp.*, No. CIV.A. 06-540, 2009 WL 1116595, at *6 (E.D. Pa. Apr. 24, 2009); *see Lum v. Nationwide Mut. Ins. Co.,* 1982 WL 1585 (Del. Super. Ct. April 27, 1982) (holding, in a wrongful death claim, "the representatives of the decedent's estate are entitled to recover the amount, discounted to present value, that the decedent would likely have saved from his earnings over the course of his lifetime and left in his estate, but for his wrongful death"); *see also Bradley v. Dionisi*, 1988 WL 130411 (Del. Super. Ct. Nov.17, 1988).

10

(d) the expert has reliably applied the principles and methods to the facts of the case.[40]

15.    The touchstones of a Rule 702 analysis are relevance and reliability.[41] Trial court judges are to act as gatekeepers with broad discretion in determining whether expert testimony is reliable and relevant.[42] If a court finds the expert's testimony is either irrelevant or unreliable, it should exclude that testimony.[43] The burden is on the proponent to establish relevance and reliability by a preponderance of the evidence.[44] An expert's testimony is relevant if it relates to an "issue in the case" and aids a fact-finder in understanding or determining those issues.[45] An expert's testimony is reliable when the expert's theory or technique is assessed through four factors: testing, peer review, error rate, and acceptability to experts in the same field.[46] No one factor is dispositive and the list is non-exhaustive.[47]

16.    When considering the aforementioned factors, a court must focus on an expert's methodology, not the conclusions that his or her methodology creates.[48] An

---

[40] D.R.E. 702.

[41] *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 594–95 (1993); *see M.G. Bancorp., Inc. v. Le Beau*, 737 A.2d 513, 522 (Del. 1999) (holding that *Daubert* and its progeny is the "correct interpretation of Delaware Rule of Evidence 702").

[42] *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010).

[43] *Tumlinson v. Advanced Micro Devs., Inc.*, 81 A.3d 1264, 1269 (Del. 2013).

[44] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006).

[45] *Tumlinson*, 81 A.3d at 1269 (citing *Daubert*, 509 U.S. at 591).

[46] *Bowen*, 906 A.2d at 794.

[47] *Tumlinson*, 81 A.3d at 1269 (citing *Daubert*, 509 U.S. at 593).

[48] *Id.* (citing *Daubert*, 509 U.S. at 595).

expert's opinion must be supported by facts and not based on *ipse dixit*.[49] Furthermore, the expert's opinion cannot mislead or confuse the jury.[50] A strong preference to admit expert testimony exists if that testimony would be useful for a trier-of-fact.[51] The Delaware Superior Court has held that "'cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' are, more often, the appropriate methods for attacking scientific, technical, or other testimony based on specialized knowledge."[52] Objections to factual bases or biases go to credibility, not admissibility, and such challenges are more suited for trial.[53]

17. Dr. Spizman's testimony as an expert is admissible because it is both relevant and reliable opinion testimony. First, Dr. Spizman's scientific, technical, and other specialized knowledge will assist the trier of fact in understanding the evidence and determine a fact in issue.[54] He is a forensic economist with thirty-five years' experience qualifying claims of lost earning capacity.[55] Dr. Spizman received a Ph.D. in economics from the State University of New York at Albany in 1977.[56]

---

[49] *Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826, 851 (Del. Super. Ct. 2000) (citing *General Electric Co.*, 522 U.S. 136, 146 (1997)).
[50] *Daubert*, 509 U.S. at 595.
[51] *Norman v. All About Women, P.A.*, 193 A.3d 726, 730 (Del. 2018).
[52] *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4151288, at *1 (Del. Super. Ct. Aug. 29, 2018) (citing *Daubert*, 509 U.S. at 596).
[53] *Id.* at *4.
[54] *See* D.R.E. 702(a).
[55] Pls.' Resp. Mot. Exclude, Exhibit C at 1, D.I. 52.
[56] *Id.*

From 1977 to 2013, he was a professor of economics at State University of New York Oswego.[57] Additionally, Dr. Spizman has worked as an economic consultant since 1985.[58] He has authored more than thirty-five articles on the subject of labor and forensic economics and has served as the president of the National Association of Forensic Economics ("NAFE"), from which he has received multiple awards in economics.[59]

18. Dr. Spizman's methods are both reliable and relevant.[60] His report is based on multiple sources of information, such as ages of the decedents, tax returns, and various governmental and professional tables and publications.[61] In relying on these resources, Dr. Spizman applied the standards set forth in them to the ages and work life of the decedents in order to determine the proper amount of future income and living expenses.[62] For example, Dr. Spizman relies on the National Vital Statistics Report from the Department of Health and Human Services, Center for Disease Control and Prevention to determine the life expectancy of both decedents.[63] He relies on the analysis provided in the Journal of Political Economy to determine

---

[57] *Id.*
[58] *Id.*
[59] *Id.* (Spizman received the Ward Piette Research Prize for his publication tilted "Loss of Future Income in Personal Injury of a Child: Parental Influence on a Child's Future Earnings").
[60] *See* D.R.E. 702(b-d).
[61] Pls.' Resp. Mot. Exclude, Exhibit C at 2.
[62] *Id.*
[63] *Id.*

13

how long a self-employed individual would remain in the work force through the use of his or her tax returns.[64] Finally, Dr. Spizman relies on the "Patton-Nelson Personal Consumption Table" that was published in the journal of Legal Economics to determine how much personal consumption should be subtracted from future earnings.[65]

19. This specialized knowledge and reliable methodology will assist the trier-of-fact in determining the how much the Plaintiffs are entitled to under 10 *Del. C.* § 3742(d).[66] The Court's gatekeeper role does not extend to determining the accuracy of an expert's opinion, merely the reliability of his methodology. What Cole's complaint with Dr. Spizman's opinion boils down to is a disagreement with his conclusion about the amount that the decedents' earning capacity should be reduced by their living expenses. He argues that "Reducing these amounts by a mere 13.50% figure is an obvious understatement of actual costs of all living expenses combined."[67] Clearly Dr. Spizman took living expenses into account when determining future lost savings. Simply because Cole disputes the amount Dr.

---

[64] *Id.*

[65] *Id.* at 5.

[66] *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4151288, at *1 (Del. Super. Ct. Aug. 29, 2018) (citing *Daubert*, 509 U.S. at 596).

[67] Def.'s Mot. to Exclude, at 11, D.I. 50.

14

Spizman assigns to living expenses does not provide a basis to exclude Dr. Spizman's testimony.[68]

19.     Finally, Dr. Spizman's opinions would not mislead the trier-of-fact or create unfair prejudice because his opinions are supported by facts and reached through proper methodology.  Cole may more appropriately attack the credibility of Dr. Spizman through "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]"[69]  Dr. Spizman's testimony is admissible, and therefore, Cole's motion to exclude it is **DENIED.**

**THEREFORE**, Defendant Roger Cole's Motion to Exclude Plaintiffs' Claims for Lost Savings is **GRANTED IN PART** and **DENIED IN PART.**


**IT IS SO ORDERED.**


/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[68] Dr. Spizman's figure of 13.50% was based on a male in a two-person family with a gross family income of over $200,000.  Pl.'s Response to Mot. to Exclude, Ex. A, at 4, D.I. 52.  Obviously, that percentage would be higher if the decedents were in single-person households because a single person would not be able to share expenses for housing, food, utilities, insurance, taxes, and other household expenses.

[69] *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4151288, at *1 (Del. Super. Ct. Aug. 29, 2018) (citing *Daubert*, 509 U.S. at 596).