IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PETER J. WONG, M.D., and | § | |
| DEDICATED TO WOMEN, OB- | § | No. 133, 2018 |
| GYN, P.A., | § | |
| | § | Court Below: Superior Court |
| Defendants Below, | § | of the State of Delaware |
| Appellants, | § | |
| | § | C.A. No. N14C-01-185 VLM |
| v. | § | |
| | § | |
| MONICA BROUGHTON, | § | |
| individually, and as Parent and Natural | § | |
| Guardian of AMARI M. | § | |
| BROUGHTON-FLEMING, a Minor, | § | |
| | § | |
| Plaintiffs Below, | § | |
| Appellees. | § | |

Submitted: November 28, 2018
Decided: February 4, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Joshua H. Meyeroff, Esquire, Morris James LLP, Wilmington, Delaware, for Appellants, Peter J. Wong, M.D., and Dedicated to Women OB-GYN, P.A.

Bruce L. Hudson, Esquire, and Ben T. Castle, Esquire (*Argued*), Hudson & Castle Law, LLC, Wilmington, Delaware, for Appellees, Monica Broughton and Amari M. Broughton-Fleming.

**VAUGHN**, Justice:

# I. INTRODUCTION

This is a medical negligence case in which a jury returned a verdict in favor of the plaintiff, Monica Broughton, in the amount of $3 million. The case was brought by Ms. Broughton individually and as parent and natural guardian of her nine-year-old son, Amari Broughton-Fleming. The injury involved was a permanent injury to Amari's right brachial plexus that occurred during birth. The defendants are Dr. Peter J. Wong and his medical practice, Dedicated To Women, OB-GYN, P.A.

Dr. Wong and his medical practice make four arguments on appeal. First, they contend that the Superior Court erred when it denied their motion *in limine* to exclude the opinion of the plaintiff's standard of care expert, Dr. Marc Engelbert. They characterize his opinion as being that Dr. Wong breached the standard of care based solely on the fact that Amari sustained a permanent brachial plexus injury. According to them, Dr. Engelbert's opinion did not satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[1] and *Bowen v. E.I. DuPont de Nemours & Co.*[2] and constituted an impermissible *res ipsa loquitur* opinion that allowed the jury to improperly presume negligence from the fact that an injury occurred.

---

[1] 509 U.S. 579 (1993).
[2] 906 A.2d 787 (Del. 2006) (en banc).

Second, they contend that the Superior Court erred when it denied their motion *in limine* to exclude the plaintiff's causation expert, Dr. Scott Hal Kozin. They contend that Dr. Kozin's opinion lacked a proper factual foundation, failed to satisfy the criteria of *Daubert* and *Bowen*, and constituted an impermissible *res ipsa loquitur* opinion.

Third, they contend that the Superior Court erred when it permitted the plaintiff to elicit statistical evidence from Dr. Wong and his experts to establish the rarity of brachial plexus injuries. They argue that this evidence was improperly used to suggest that Dr. Wong must have been negligent based upon an unusual outcome. Appellants contend that such evidence must be excluded under *Timblin v. Kent General Hospital (Inc.)*.[3]

Fourth and finally, they contend that the Superior Court erred when it refused to instruct the jury on "Actions Taken in Emergency."

The first and third contentions were directly addressed by the Superior Court in a ruling on post-trial motions, and we affirm the Superior Court as to those issues for the reasons given in its opinion. The second and fourth contentions, which were initially raised and denied before trial, were not reargued in the post-trial motions. For the reasons that follow, we affirm the Superior Court as to these two contentions as well.

---

[3] 640 A.2d 1021 (Del. 1994).

## II.   FACTS AND PROCEDURAL HISTORY[4]

The plaintiff claims that Dr. Wong negligently applied excessive lateral traction during childbirth with such force that the stretching of Amari's head during delivery caused a permanent right brachial plexus injury.   During birth, Amari's right shoulder was lodged under the mother's pubic bone, a life-threatening condition known as shoulder dystocia.   Dr. Wong's defense was that, because of the shoulder dystocia he used what he considered to be a "unique" method of delivery and noted in his records that he had "not applied any traction" to Amari.[5] To explain the cause of injury, the defendants and their experts relied heavily upon the American Congress of Obstetricians and Gynecologists ("ACOG") Monograph as scientific evidence that Amari's injury was the result of maternal endogenous forces during labor and not attributable to Dr. Wong's actions.   Put simply, their contention was that the mother's pushing during delivery caused the injury.

At trial, the facts showed that, during delivery, the force that occurred was sufficient to cause both transient and permanent nerve damage to Amari's right arm. Although he subsequently underwent two major surgeries (performed by Dr. Kozin) to repair the damaged nerves, his injury left him permanently impaired.   His right arm is visibly shorter than his left, and this prevents him from doing certain

---

[4] Unless otherwise indicated all facts are taken from the Superior Court's post-trial opinion.   *See Broughton v. Wong*, 2018 WL 1867185 (Del. Super. Feb. 15, 2018).
[5] *Id.* at *1 (quoting Defs.' Post-Trial Mot. ¶ 2).

3

activities, including riding a bicycle and playing his favorite sports.    Medical testimony established that his physical deficits will carry into his adult life.

Both sides presented conflicting accounts from eyewitnesses who were present in the delivery room.    Amari's father and maternal grandmother both testified that they observed Dr. Wong pull on Amari's head when he was emerging during delivery.    The defendants' eyewitnesses (medical staff present during delivery), however, testified that they did not make similar observations, and Dr. Wong denied that he ever pulled on Amari's head.    Against this factual inconsistency, the parties' medical experts gave conflicting opinions on the critical issues of standard of care and causation.

Prior to trial, the defendants filed motions *in limine* to exclude the testimony of the plaintiff's experts, Drs. Engelbert and Kozin.    The defendants argued that both experts failed to meet the requirements of Delaware Rule of Evidence 702, *Daubert*,[6] and its Delaware progeny,[7] contending that each expert's opinion lacked an adequate factual basis and relied "upon impermissible *res ipsa loquitur* or *ipse dixit*-type reasoning—that the presence of the injury alone meant that Dr. Wong breached the standard of care and caused the injury."[8]    In particular, the defendants took issue with Dr. Engelbert's opinion that, because Amari suffered a permanent

---

[6] 509 U.S. 579.

[7] *E.g.*, *Bowen*, 906 A.2d 787.

[8] *Broughton*, 2018 WL 1867185, at *2 & n.4.

(as opposed to a transient) brachial plexus injury, Dr. Wong must have applied excessive lateral traction and, therefore, breached the standard of care. In making this argument, the defendants relied upon the ACOG Monograph, which they contended established that Amari's permanent injury could have been caused by maternal forces. The Superior Court denied these motions, finding that both experts satisfied the requirements of Rule 702 and the relevant case law.

After the close of the plaintiff's case and again when all the evidence was in, the appellants moved for judgment as a matter of law under Superior Court Civil Rule 50(a). They reiterated their objections concerning Dr. Engelbert's *res ipsa loquitur* reasoning and raised an additional argument, not raised on appeal, that excessive traction could be appropriate as a lifesaving alternative in a medical emergency. The Superior Court denied their motions.

After trial, the Appellants renewed their motion for judgment as a matter of law under Superior Court Civil Rule 50(b) and, in the alternative, sought a new trial under Rule 59 or remittitur. The Superior Court denied the appellants' post-trial motions.

### III. DISCUSSION

The defendants' first three contentions on appeal involve questions of the admissibility of evidence and expert testimony, which this Court reviews for an

5

abuse of discretion.[9] As mentioned, we affirm the Superior Court as to the defendants' first and third contentions for the reasons given in its post-trial opinion and find that the court did not abuse its discretion in overruling the defendants' objection to Dr. Engelbert's expert opinion testimony or in allowing the plaintiff to elicit statistical evidence from Dr. Wong and his experts.

At the outset of its post-trial opinion, the Superior Court agreed that the jury may not presume negligence from the mere presence of an injury. The court found that Dr. Engelbert's expert opinion testimony was admissible, and not an impermissible *res ipsa loquitur* theory, because his opinion that the permanency of the injury established that Dr. Wong breached the standard of care was supported by "multiple, reliable medical sources."[10] Dr. Engelbert explained that he disagreed with the ACOG Monograph study upon which Appellants heavily relied because the study did not fully differentiate between a permanent versus transient injury. Moreover, the court explained, "there was evidence in this case that [Dr. Engelbert's] opinion was based upon medical records, eyewitnesses' accounts of the delivery, and all other information an expert would ordinarily rely upon in his field, including ruling out other causes."[11]

---

[9] *Green v. Alfred A.I. duPont Inst. Of the Nemours Found.*, 759 A.2d 1060, 1063 (Del. 2000); *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 522 (Del. 1999) (en banc).
[10] *Broughton*, 2018 WL 1867185, at *4 (citing sources).
[11] *Id.*

Ultimately, the court found that Dr. Engelbert's opinion, when considered in light of all the evidence, met the requirements under Delaware Rule of Evidence 702 and *Daubert*:

> Given the issues in this case, it was proper for the jury to understand the distinctions about the severity of the injury through his explanation, and to be given an opportunity to refute the conclusions in the ACOG Monograph. On cross-examination, it was appropriate for him to defend his conclusions, rule out other causes, and explain why the permanency of the injury was germane to his opinion that Dr. Wong's unique method of delivery breached the standard of care. . . . For these reasons, this Court finds that Dr. Engelbert's opinion went beyond a *res ipsa loquitur* conclusion and the testimony challenged by Defendants goes to the weight of the evidence, not its admissibility.[12]

We agree that Dr. Elbert's testimony was not an impermissible *res ipsa loquitur* theory and affirm the Superior Court's ruling for the reasons assigned by it.

Additionally, although not mentioned by the Superior Court in its post-trial opinion, Dr. Engelbert relied upon his nearly thirty years of experience as an obstetrician and gynecologist in forming his opinion that, absent other causes not relevant here, excessive lateral traction during delivery caused Amari's permanent brachial plexus injury. As we have previously held, an expert in a medical negligence case "must be familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify in order to offer a standard of care

---

[12] *Id.* at *5.

opinion" and may be so qualified based on his or her experience and knowledge.[13]

Because Dr. Engelbert's testimony established that he was qualified as an expert and familiar with the degree of skill ordinarily employed in obstetrics from his years of experience in the field, the Superior Court did not err in allowing his opinion testimony into evidence.

As to the defendants' third argument, regarding the statistical testimony elicited at trial, the court found that this evidence was not of the same quality as the evidence disallowed in *Timblin*.[14] In *Timblin*, the defense attempted to tie statistical evidence of mortality rates of those who suffer cardiopulmonary arrest to the standard of care, in effect arguing that the patient was likely to die or suffer brain damage no matter what the hospital did.[15] This Court held that this evidence was highly prejudicial with little probative effect, and thus inadmissible under Delaware Rule of Evidence 403, because "[t]he statistical probability of death or brain damage following a cardiac arrest cannot be used to show that [the hospital] acted in conformity with the applicable standard of care."[16] It was undisputed that Timblin's brain damage was caused by a long period of oxygen deprivation because

---

[13] *Norman v. All About Women, P.A.*, 193 A.3d 726, 730 (Del. 2018) (internal quotation marks omitted).
[14] 640 A.2d 1021.
[15] *Id.* at 1022-24
[16] *Id.* at 1024, 1023-26.

he was not intubated.[17] "[T]he causation issue was solely whether the inability to intubate was caused by the hospital's alleged negligence, 'not whether [Timblin]'s brain damage was an inevitable result.'"[18] Accordingly, this Court held that the statistical evidence was misleading: "the statistics invited an inference that, because the majority of patients who suffer a cardiac arrest die or suffer brain damage, [Timblin] was expected to suffer brain damage."[19]

The Superior Court contrasted the statistical evidence here with the evidence in *Timblin* and explained that here the statistical testimony went to the experience of each of the experts, provided background information, and otherwise simply established that brachial plexus injuries are rare—something upon which all experts agreed. Furthermore, the Superior Court noted that the statistical testimony was "an appeal to the common sense of the jury and directly rebutt[ed] Defendants' trial theory that mother's endogenous forces caused the injury."[20] The court thus found that the testimony did "not constitute statistical evidence of the kind deemed fatal in *Timblin*."[21] We agree with the Superior Court and affirm for the reasons assigned by it.

We now address the defendants' remaining two arguments.

---

[17] *Id.* at 1024-25.
[18] *Broughton*, 2018 WL 1867185, at *7 (quoting *Timblin*, 640 A.2d at 1025).
[19] *Id.* (first alteration omitted) (quoting *Timblin*, 640 A.2d at 1026).
[20] *Id.*
[21] *Id.*

For many of the same reasons given in its post-trial opinion as to Dr. Engelbert, the Superior Court did not abuse its discretion in allowing Dr. Kozin to testify as an expert on the cause of Amari's injury. "If a witness is qualified as an expert by skill, experience, knowledge, training or education, he may offer an opinion and testify as to that opinion," and "[a] strong preference exists for admitting evidence that may assist the trier of fact."[22] Accordingly, "expert opinions are appropriate when they will assist the trier of fact in understanding the relevant facts or the evidence."[23]

The defendants make three arguments regarding the admissibility of Dr. Kozin's testimony. First, they contend that Dr. Kozin's opinion was not based on sufficient facts because it "was not based on any facts of this case."[24] Second, they argue that his opinion, like Dr. Engelbert's, was an impermissible *res ipsa loquitur* opinion—that because Amari's injury was permanent, the injury must have been caused by excessive lateral traction applied by Dr. Wong. Finally, they contend that Dr. Kozin failed to base his opinion on information reasonably relied upon by

---

[22] *Norman*, 193 A.3d at 730 (first citing D.R.E. 702; and then citing *Pavey v. Kalish*, 3 A.3d 1098, 2010 WL 3294304, at *3 (Del. Aug. 23, 2010) (Table)).
[23] *Id.*
[24] Appellants' Opening Br. at 34 (emphasis omitted).

10

experts in his field, thus not meeting the requirements of *Daubert*,[25] *Bowen*,[26] and Delaware Rule of Evidence 702.[27]

Dr. Kozin testified based on twenty years of experience conducting surgeries to repair nerves damaged during birth and on his interactions with and observations of Amari before and during Amari's two surgeries. He first operated on Amari six months after Amari was born and, at that time, identified two nerves that had been torn and would never regenerate or recover. Because of the permanency of the injury, Dr. Kozin formed the opinion that the cause of Amari's torn nerves was excessive lateral traction applied during birth. We find that Dr. Kozin's opinion was sufficiently based upon the facts of this case to satisfy Rule 702. We also find that his testimony was admissible (and not a *res ipsa loquitur* opinion) for the same reasons we find Dr. Engelbert's opinion admissible.

The defendants' final argument regarding Dr. Kozin's testimony is essentially that Dr. Kozin's opinion was not based on information reasonably relied upon by experts in his field because he failed to cite any literature for excluding maternal forces or other causes of Amari's injury and failed to distinguish effectively the ACOG Monograph, which conflicts with his opinions. As we explained in

---

[25] 509 U.S. 579.
[26] 906 A.2d 787.
[27] Appellants cite Delaware Rule of Evidence 702, but this specific notion—that an expert may base his or her opinion on information reasonably relied upon by experts in the field even if such information is not admissible into evidence—comes from Rule 703.

11

*Norman*, however, the requirement that the expert's opinion be based upon information reasonably relied upon by experts in the particular field is a guard against the use of inadmissible hearsay and "does not pertain to information which the expert has not relied on."[28] Dr. Kozin was not required to rebut the ACOG Monograph as a condition of admissibility of his testimony. The defendants' argument on this point goes to the weight to be given Dr. Kozin's testimony, not its admissibility.

As to the defendant's fourth contention—that the trial court erred in refusing to instruct the jury on "Actions Taken in Emergency"[29]—we conclude that the court committed no legal error. Whether the "Actions Taken in Emergency" instruction applies to medical negligence cases is a question of law, which this Court reviews *de novo*.[30] The "Actions Taken in Emergency" instruction has traditionally been

---

[28] 193 A.3d at 731.

[29] The proposed instruction reads as follows:

> When a person is involved in an emergency situation not of his own making and not created by his own negligence, that person is entitled to act as a reasonably prudent person would under similar circumstances. Therefore, if you find that Dr. Wong was confronted by an emergency situation when Amari Broughton-Fleming presented with shoulder dystocia, you should review Dr. Wong's conduct in light of what a reasonably prudent person would have done under those circumstances.

Appellants' Opening Br. at 42.

[30] *See Hankins v. State*, 976 A.2d 839, 840 (Del. 2009) ("[T]his Court will review *de novo* a refusal to instruct on a defense theory (in any form) . . . ." (quoting *Wright v. State*, 953 A.2d 144, 148 (Del. 2008) (en banc))); *North v. Owens-Corning Fiberglas Corp.*, 704 A.2d 835, 837-38 (Del. 1997) ("The trial court . . . must not ignore a requested jury instruction applicable to the facts and

12

given only in automobile accident cases. The standard instruction for medical negligence cases, which is supplied by statute,[31] inherently incorporates the concept that medical doctors and professionals routinely encounter what many would consider to be an "emergency." The statutory standard captures this by defining the standard of care as "that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant."[32] As pointed out by Dr. Engelbert, doctors in the field of obstetrics are well aware of shoulder dystocia and have specific methods for dealing with it. Dr. Wong simply needed to exercise "that degree of skill and care ordinarily employed" by obstetricians, and that degree of skill and care did not include applying excessive lateral traction. The Superior Court correctly refused to instruct the jury on "Actions Taken in Emergency."

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

law of the case.").

[31] *See* 18 *Del. C.* § 6801(7) (defining medical negligence).

[32] 18 *Del. C.* § 6801(7).